Case number 18-3076 et al. United States of America appellant v. Jaime Omar Vasquez-Benitez, also known as Guero, also known as Alex Antonio Vasquez, also known as Jaime Huero, also known as Jerman Vasquez-Mato, also known as Julio Israel Vasquez, also known as Herman Eduardo Vasquez. Ms. Gray for the appellant. Ms. Sheketaw for the appellant. Ms. Gray, good morning. Good morning. Good morning, Your Honors. I may have placed the court. Katherine Gray for the United States. And I'd respectfully like to reserve two minutes for rebuttal, if I may. And just to note right off the bat, the government would like to submit on the papers with respect to the criminal bail aspect of the appeal by the U.S. Attorney's Office. And instead, today, I'd like to focus on the district court's order as it applies to the Department of Homeland Security. All right. The ruling that the Bail Reform Act supersedes the IAM. Correct. Yes, Your Honor. Okay. This court should reverse what the district court called its new rule, categorically barring the civil immigration detention of a defendant charged with illegal reentry ordered release in his criminal case. The district court's order wrongfully compels two different departments to choose between the enforcement of two different statutory schemes that Congress intended to work in tandem rather than in opposition. Now, first, I'd like to first explain why the BRA and the INA are capable of coexistence and should be given full effect within their respective criminal and civil spheres. And then, I'm happy to address the constitutional ruling by the district court and explain why nothing constitutionally prohibits simultaneous civil and criminal enforcement. So, starting with the statutory point, under the Supreme Court's directive in Morton v. Mancarty, to uphold the district court's order, this court would have to find clear congressional evidence of intent that the BRA, in 1984, permitting release in a criminal case, somehow supersedes the later-enacted 1996 amendments to the INA, and thus mandate the detention of the defendant in this case. However, nothing in the BRA shows any congressional intent that its provisions categorically supersede the INA's mandates. Congress created separate remedies for the criminal prosecution of aliens who illegally reentered this country and for the administrative removal proceedings of those same individuals because it intended for those remedies to both apply and not for one to proceed to the exclusion of the other. And the district court's order relied exclusively on one section of the Bail Reform Act, and that's section 3142D. But... Well, I think that's actually the biggest problem with the district court's order in this case. It didn't find that ICE was specifically circumventing its release order by holding him for the purpose of the criminal proceedings. But that could be... Suppose that was, in fact, the case. It cannot hold a defendant for any other purpose than to pursue its administrative proceedings and ultimately removal against the defendant. Okay, right. Can I ask you about the Sixth Circuit opinion, which Judge Lambert did not have the benefit of? Correct. And do you have it in front of you? Because it's a sentence I'm not going to ask you about. It's the last paragraph before section 3, and the opinion says, one of the primary purposes of the VRA is to ensure the appearance of criminal defendants in judicial proceedings. Then it's the next sentence, to the extent that ICE may fulfill its statutory mandates without impairing that purpose of the VRA, there is no statutory conflict. And my question is, because I have a question mark next to that, because if ICE's statutory mandate is to take him into custody and deport him, then that does not ensure the appearance of him at his judicial proceeding, in this case his trial. So... What do you... I mean, how do you read that, to the extent that ICE should... The Court seems to be limiting the lack of a conflict here, to the extent that ICE can fulfill its mandates without impairing that purpose, which is to make sure the defendant shows up at the criminal proceeding. So my reading of that sentence by the Sixth Circuit is that it's acknowledging that there are improper reasons for ICE to hold someone. And if those reasons are to prevent the appearance of a defendant in court for his criminal proceedings, then I think that that would be inconsistent with the VRA. I don't understand how that would work. I mean, if their purpose is to deport him, right, and they succeed at that, then he won't be able to appear for trial. So are we supposed to get into the motive of ICE? In other words, are they seeking to deport him or are they seeking to deport him to prevent him from appearing at trial? I don't understand that. I think that that would be a relevant question that the district court would have to ask. The district court here didn't ask any of those questions. It didn't make any findings whatsoever. It categorically barred, by virtue of a new rule it announced, any detention by ICE after a defendant's release from criminal proceedings. These are both executive agencies. Right. So I don't see how this issue can really arise. The government's made a choice. It's a unitary executive. There's a disagreement between two agencies. It gets resolved at a higher level. Right. And, Your Honor, it's our position, and the Tenth Circuit agrees with this, and Aileon, one of the cases that we cited in our briefing, that to the extent such a conflict would arise, that is something for the executive branch to resolve internally. It's not for an Article III court to dictate how the article, a separate branch of government, makes those determinations. And in this case, that is simply not at issue because — Do we know that it's the practice of INS to say, okay, even though he's released under the Bail Reform Act, we think for various reasons he should be detained. We will detain him and hold him here in this country until the criminal proceedings are done. I mean, do you know whether that's the practice? Is there anything — No, that's absolutely not the practice. If ICE detains a criminal — Well, that would be — that, according to your — that would be inappropriate, correct? Depending on the circumstances — No, but your answer to Judge Henderson's question, based on your earlier answer, should be, yes, that's inappropriate. They cannot hold — ICE cannot detain him to hold him for trial. They can only detain him to deport him. I think that's right. And let me just clarify, though, that to hold him for removal or deportation doesn't necessarily entail immediate deportation. In this case, he has affirmatively delayed or prolonged his own removal because he's requested relief from that removal. But that doesn't detract at all from the fact that he will be removed. It just — like, his claim for relief dictates where he will be removed. But the fact remains that he is ordered, subject to a final order, to be removed from the country. And your Honor's questions actually highlight the failure of the district court to identify the motive of ICE's detention. And, in fact, the court expressly held that ICE would have authority under immigration laws. And I notice that my time is — I would like to make a rebuttal. So I'm hoping to reserve the last 45 seconds. Unless your Honors have any further questions right now. Thank you. Good morning. Julia Fong Sheketoff for Jaime Omar Vasquez Benitez. As three judges in the district court agreed, Mr. Vasquez Benitez should be released under the Bail Reform Act. Their rulings were not clearly erroneous. Judge Lamberth was also correct to rule that the district court requiring that Mr. Vasquez Benitez be released applies just as much to ICE as to the U.S. Marshals and to everyone else in the executive branch. The government — Why is the Sixth Circuit wrong then? Because we now have this decision. The Sixth Circuit, first of all, was addressing a slightly different provision in the Bail Reform Act, so I don't think it squarely governs here. It's true that some of the language in both provisions are similar. And so I think the reasoning in that case is not applicable because the court didn't have before it the textual arguments that I've made here. The court in that case was addressing arguments more fundamentally just about the fairness of the proceedings, about how it doesn't make sense for the executive branch to be permitted to proceed both through the U.S. Marshals and through ICE rather than to have to pick which proceeding it would seek to detain the defendant in connection with. I think for the reasons laid out in my brief, the textual — Let me just go to the core of my concern here. You were subject to the Supreme Court's ruling in Morton that court's obligation is to make two statutes reconcilable, absent express congressional intent and a contrary. Right? That's the rule we're operating under here. Your argument that there is express congressional instruction here is all based on 3142d. Right? I don't think that's right, Your Honor. It isn't? Well, let's just — but that is part of your argument, right? That's part of the argument, correct. But that's a provision that applies only in one unique situation and not even in this case. I disagree with that, Your Honor. I think 3142d applies in the sense it applies all the time. It does not authorize detention here. Right. But I think it governs all situations in which you have a defendant who's subject to the Bail Reform Act. Now, the fact that it doesn't authorize pretrial temporary detention here, I think, goes to show that Congress did not, in fact, authorize ICB's kind of action that it wishes to take here. But it's not simply 31 — You have to explain that to me a little more. I don't — I mean, I've read your brief carefully, and I just don't see why this provision creates the express congressional intent that the Bail Reform Act takes precedence over the immigration statute. To be clear, I don't mean to — it is true that Judge Lambert focused primarily on 3142d, but I don't mean to focus exclusively on that provision. I actually think that the language in 3141 and 3142a is even clearer. It says that a district court is required to order a defendant detained or released without any limitation on the actors who are required to release the defendant if a release order is indeed issued. I don't understand how ordering a defendant, quote-unquote, released allows the U.S. marshal or requires the U.S. marshals to release him, but doesn't equally apply to another branch of the executive or another arm of the executive. Because the purpose is — and I'm just playing devil's advocate here. Because the purposes of the two actions are different. The district court has determined that the defendant doesn't need to be detained pretrial in order to stand trial in a criminal case, right? Where the question is, did the defendant violate federal law by reentering the country? That's on the one hand. On the other hand, you have a different federal agency that's operating under a different statute with different standards, and its only remedy is deportation. It's not criminal. So why are they inconsistent? In other words, if it's true that ICE is not holding the defendant pending trial, which the government insists it's not, and I'm not aware of any evidence in the record that that's what it's doing, as long as it isn't doing that, why is its action inconsistent with the district court's work? I don't read the Bail Reform Act to say you can — when we order, or when a district court orders someone released, it's okay for one agency to hold him for this other purpose, but not okay for this agency to hold him for this other purpose. Well, the Bail Reform Act doesn't say that. But if you read the two statutes together, that's what they say. I think you can read the two statutes together. I think you read the Bail Reform Act to require release pending judicial proceedings, which means before judicial proceedings. And the Immigration Act provides a general grant of authority to detain. And, again, I don't think that actually applies here. But setting that aside, it's a general grant of authority to detain. I don't actually think that's inconsistent with a very specific statutory command that in a particular instance a district court is empowered to order someone released. Presumably there is also a federal statute that says the U.S. Marshals are empowered to detain or to arrest in various circumstances. That's not overruled or in conflict with the Bail Reform Act. It's simply that when a judge under the Bail Reform Act finds grounds to order someone released, that order applies to all executive branch actors. To go back to Your Honor's point about the purpose, the government's purpose in doing this, I certainly think it is a substantial problem that the government may have an unlawful purpose of detaining through ICE when instead when a district court has ordered that the U.S. Marshals can't detain. But I don't think the sole remedy here is for Mr. Vasquez Benitez to try to prove in a judicial proceeding what the executive branch's secret intent was. I think the court's obligation is to read the statute in a way that doesn't create these problems in the first place. By the way, I want to ask you a question. The amicus brief says at one point, page 6, it says the government, quote, made the choice to prosecute the defendant here in lieu of removal. Do you agree with that? I think what the amicus is explaining is that ICE had the defendant, Mr. Vasquez Benitez, first. ICE could have proceeded solely with the removal proceedings, but instead what it did was it transferred the custody of Mr. Vasquez Benitez to the U.S. Marshals and the U.S. Attorney's Office, who then brought this prosecution, creating the issue in the first place. But you're not aware of any evidence in the record, are you, that ICE now, if we were to disagree with the district court and enter an opinion that allowed ICE to detain him, there's nothing in the record that suggests the purpose, and this is a question not a statement, that the purpose of that detention is to hold him pending trial. Is there? I think two things. One, I think timing possibly does support that. And why is that? Well, like I said, it was ICE who had custody of the defendant first, held him for, I think, two plus months, and only then referred him, once he brought his withholding claim, only then referred him for prosecution. I see. But if that is indeed the inquiry, I would ask that Your Honor remand with instructions that the district court take evidence on that question or that Mr. Vasquez Benitez be allowed to present evidence and argument on that question. If I may briefly respond to something. You're responding to something Judge Anderson addressed. I'm happy to address you then. I just want to know what practical difference it makes, whether the court resolves or does not resolve the bail decision. It would make a substantial practical difference to Mr. Vasquez Benitez because he's released right now, and so if the court... I'm sorry. Assuming that we were to agree with the government on the relationship between the two statutory regimes... Oh, I'm sorry. ...so that he can be remanded to ICE, what difference does it make whether we resolve the... The difference would be in the identity of the custodian. So if you rule on only the second ground and then ICE would be the agency that detains Mr. Vasquez Benitez, I believe that is less convenient for his trial attorney. The facility is... Would be back in Farmville. Yeah, I believe so. You can ask the government. Whereas if you ruled on the second ground, again, I think we're right on both grounds, but if you were to rule against us on the first ground, then the marshals, I believe, would have custody. If I could quickly address Judge Henderson's point about the Sixth Circuit opinion, I just want to focus on that to the extent that ICE is holding someone truly for the purpose of removal proceedings, only in connection with that, the removal proceedings should generally occur before the end of a criminal case. In general, the INA authorizes a 90-day removal period. I believe that's because particularly when you have a reinstatement of a removal order, these things should go relatively quickly. Now, in our case, of course, we have this withholding claim, so that may not occur here. But that absolutely will then interfere with the operation of the Bail Reform Act in ensuring that the defendant be available for trial. In contrast, if ICE is actually going to detain the defendant up until his actual trial, I think that does suggest that their purpose in detaining is not actually for removal, but to actually detain him in connection with a criminal proceeding. So I think that you're correct to focus on the Sixth Circuit's language there. If the Court has any further questions. All right. Thank you. I would ask that the Court affirm. I just want to address a few things that counsel just mentioned. So I think it's notable that the magistrate judge and Judge Boasberg both acknowledged the likelihood that ICE would take custody of the defendant after they issued the removal order. This release order is the one that Judge Lambert, in his decision, purported to compel compliance with. However, the release order did not in any way apply to ICE's detention. Second, the Sixth Circuit expressly applied its holding in three different places in the decision to pre-trial detention as well as pre-sentencing detention. And I also want to note that Section 1231 of the INA is a specific mandate for the detention of this defendant. And as far as the purpose for which ICE was holding the defendant, ICE reinstated the order before he was indicted in the criminal case. It made all of the travel arrangements. It had booked his flight. It had done everything that it would need to do to physically remove the defendant from the country. It wasn't until the defendant himself requested additional hearings to determine his claim of fear. Do you agree with your friend that the practical effect here of the release – pardon me – of the bail decision is who gets custody makes a difference? That is to say, if we agreed with you on the INA but did not resolve the release of the bail act decision, what practical difference does it make to anyone? Well, I think there's a huge difference because ICE would be holding – if I'm understanding your question correctly, and I'm not sure that I am – ICE would be holding him to effect its own mandate to have these administrative proceedings and pursue removal. ICE would be holding him. So what's the difference whether the decision to release him was well founded or not? They're not holding him on the basis of that. It's in spite of that. Well, I think that goes to the heart of why these two departments have their separate statutory mandates and purposes. And to the extent that the U.S. Attorney's Office has pursued his pretrial detention in district court and is continuing to pursue it here only highlights the fact that its considerations, its reasoning, the standards that apply for his criminal bail are completely different from those that would apply in his administrative proceedings. Maybe it's a question of mootness. I mean, if he's detained by ICE, then I guess what Judge Ginsburg is asking is what difference does it make about the propriety? I mean, it seems to me the only circumstances under which the district court's decision – I guess if ICE – is the concern that ICE may in the end, even if we agree with you, decide not to detain him? Is that a possibility? Yes, that is always a possibility in these cases. That's a possibility? And that's precisely why the two departments have different goals. But they have to detain him until – unless he prevails on his asylum claim, right? Can you repeat the first part of what you – I think ICE has to retain him until they remove him unless he prevails in his claim of well-founded fear of persecution. That's more or less correct. If he does prevail – More or less is critical here because, I mean, if – as I understood Judge Ginsburg's question, he was asking whether under the statute I see ICE has to detain him. Right. And if ICE has to detain him, then why isn't the question of whether or not the district court clearly erred moot? Because – As a legal matter, and I know that Your Honors are focusing on the practical effects here, but as a legal matter, it's really important, I think, to understand that each department has different goals. If there's no practical consequence, that doesn't much matter. Now, counsel for the defendant here said the practical consequence is that he would be detained at some different place, less convenient for him. Is that true? No, I would not agree with that. The ICE detention center is in Virginia. It is where he's been detained for – since July until the district court's release order. Counsel below offered zero evidence of how that would somehow interfere with his communication with his counsel. And, in fact, that ICE detention center has visitation hours from 9 to 9 every day. There's screens in every room where detainees can communicate via video chat or video talk or whatever it is, with their counsel or their family or their friends. But more to the point, there's no evidence in this case that that's somehow hampered the defendant's ability to communicate with counsel. Can you just help me? So let's assume that this court agrees with your view about this and ICE detains him. Then – and let's assume it's all done in good faith because ICE is detaining him to remove him, right? So he's entitled to a hearing, right, on his claim that he risks – he faces serious risks being deported, correct? And does all that have to happen within a certain period of time? It doesn't. He's already been – so there's – there are a series of steps that someone claiming withholding of removal, which is the relief that he sought, or protection under the Convention Against Torture. And the first step is he claimed that fear, and then ICE referred him to U.S. Citizenship and Immigration Services for an interview to determine whether he did have a reasonable fear. At that point, USCIS determined that he did not, and he requested review of that decision in the interview by an immigration judge. Immigration judge found that he, in fact, did have a fear. And so we're at the point in the proceedings where he can – where he's scheduled for a hearing with the immigration court, a master calendar hearing, I believe they call it. And at that point, he would be able to make his formal claim for withholding of removal. And suppose the immigration judge agrees with him. Then what happens? At that point, the government would have to determine what safe third country he could be removed to. Because, again, his withholding-only claim only prevents his removal to El Salvador, the country where he's claiming he has a fear. I see. So they would still detain him. What I'm getting at, is there any circumstances under which ICE procedures would be finished and it determines he can stay in the country and that all gets done before the criminal proceedings are done? There is. Yes, Your Honor. There is that chance that that could occur. So isn't that your answer to the mootness question? At that point, the government, I assume, would want to be sure the district court has power to detain him, correct? That would be right, yes. I believe that. I think that's – And at that point, if he's removed from the country, I would have to assume that the U.S. Attorney's Office would move to dismiss the criminal charges because I don't think that would be consistent with his rights to prosecute him while he's not here. Just to conclude, nothing requires that two executive departments choose between criminal or immigration enforcement when the pursuit of both remedies is in good faith and for the purpose of effecting their independent purposes. This Court should reverse the district court's order in that regard. Thank you.
judges: Henderson, Tatel, Ginsburg